**Exhibit A**

# RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement"), effective _____, 2017, is made by and among Plaintiff Brian Theus and Defendants ABS Franchising, LLC and Byron Schoepf.

## DEFINITIONS

A. "Plaintiff" shall mean Plaintiff Brian Theus and his agents, assigns, heirs, executors, administrators, attorneys, and other representatives.

B. "Schoepf" shall mean Defendant Byron Schoepf and his agents, assigns, heirs, executors, administrators, attorneys, and other representatives

C. "ABS" shall mean and include Defendant ABS Franchising, LLC and its predecessors, successors, assigns, parents, subsidiaries, divisions, affiliated companies, associate companies, and also its present and former employees, partners, officers, members, managers, managing members, agents, assigns, heirs, executors, administrators, attorneys, and other representatives.

D. "Defendants" shall collectively mean Schoepf and ABS.

E. The "Parties" shall mean and include for purposes of this Agreement, Plaintiff, Schoepf, and ABS.

F. The "Released Parties" shall mean and include Schoepf, ABS, and United States Liability Insurance Group, and their present, former, and future officers, directors, shareholders, members, managers, managing members, employees, representatives, subsidiaries, wholly owned companies, associate companies, parent companies, franchisors, predecessors, successors, trustees, assigns, heirs, executors, attorneys, administrators, and all other persons, firms, or corporations against whom or which Plaintiff might have a claim.

G. The "Litigation" shall mean and include for purposes of this Agreement: *Brian Theus v. ABS Franchising, LLC and Byron Schoepf*, Case Number 1:16-cv-002228-AT pending in the United States District Court for the Northern District of Georgia, Atlanta Division.

H. The "Claims" shall mean Plaintiff's claims against Defendants as pleaded in the Litigation.

## RECITALS

WHEREAS, Plaintiff filed the Litigation against Defendants alleging violations of the Fair Labor Standards Act, 42 U.S.C. §201, *et seq.* (the "FLSA");

WHEREAS, the Parties, in view of the burden, expense, and uncertainties of litigation and deeming it to be in their respective best interests to resolve the claims and disputes among them, have agreed to settle amicably and resolve finally all claims among them, including all claims that were alleged or could have been alleged between or among them in the Litigation;

WHEREAS, the Parties have reached a settlement of Plaintiff's claims against Defendants on a non-admission of wrongdoing or liability basis;

WHEREAS, the Parties stipulate that the settlement is a fair and reasonable compromise in light of Plaintiff's Claims and Defendants' denial of Plaintiff's Claims; and

WHEREAS, for valuable consideration, which includes, without limitation, the foregoing

premises and recitals as well as the promises, representations, and covenants contained here, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Release and Covenant Not to Sue**. Subject to Paragraph 2, in consideration of the special benefits and compensation described herein, Plaintiff agrees, for himself and for his heirs, executors, administrators, and assigns, to release, waive, acquit, and forever discharge the Released Parties from and against any and all rights, claims, demands, liabilities, obligations, suits, charges, proceedings, actions, and causes of action, whether in law or in equity, whether known or unknown, which Plaintiff in any and all legal capacities ever had or now has, against the Released Parties arising out of or relating to, no matter how remote, including, without limitation, any and all legal, equitable, or administrative claims, demands, liabilities, obligations, suits, charges, actions, or causes of action relating to or arising from, directly or indirectly, (i) the Litigation; (ii) any causes of action, claims, or allegations included or could have been included in the Litigation; (iii) Plaintiff's former employment with, and separation from, ABS; (iv) Plaintiff's alleged former employment with, and separation from, Schoepf; and (v) any and all claims under federal, state, or local laws, which include, but is not limited to, claims arising under the FLSA, Section 1981, Title VII of the Civil Rights Act of 1964, the Employee Retirement Income Security Act of 1974, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, all as amended, and all other federal, state, and local laws prohibiting employment discrimination; it also includes, but is not limited to, any and all claims based on federal, state, or local laws which Plaintiff may have arising from or in any way relating to Plaintiff's employment with ABS, Plaintiff's alleged employment with Schoepf, or which Plaintiff did or could have asserted in the Litigation against Defendants, including, without limitation, claims alleging defamation, intentional infliction of emotional distress, assault, battery, invasion of privacy, or any other tort, or breach of contract, including without limitation claims for reliance and/or promissory estoppel.

Plaintiff agrees that this Agreement includes settlement and satisfaction of all claims of every nature held by Plaintiff in any legal capacity, direct or indirect, against all persons, firms, or corporations, including those who are or might be held to be, joint tortfeasors and/or jointly liable with any of the Released Parties, as well as those to whom any of the Released Parties are, or may be held to be, liable by way of contribution or indemnity for the payment of all or any part of any claim arising out of or directly or indirectly related to the Litigation. Plaintiff further agrees this Agreement shall encompass all claims and demands whatsoever, in law or in equity, for, upon, or by reason of any damages loss or injury, whether known or unknown, which may be traced either directly or indirectly to the Released Parties, now appearing, no matter how remotely they may be related to the Released Parties or against the Released Parties only.

2. **Claims Not Released**. This Release does not include claims or causes of action (i) arising from any breach of this Agreement by Plaintiff or Defendants; (ii) arising from the indemnification requirements identified in Paragraphs 15 and 16 of this Agreement; or (iii) any claims which the parties are unable to release as a matter of law, including, without limitation, any workers' compensation claim that Plaintiff may have against ABS.

3. **Settlement Payment to Plaintiff**. Plaintiff agrees to accept, and acknowledges the sufficiency of, the total amount of $37,500.00 (the "Settlement Payment"), subject to the below terms.

   A. **Due Date**. ABS shall remit the Settlement Payment to Plaintiff within three (3) days from Judge Amy Totenberg's entry of an Order in the Litigation that approves of this

Agreement and dismisses the Litigation with prejudice, but in no event shall ABS be required to remit the Settlement Payment to Plaintiff earlier than ten (10) days from Defendants' receipt of this Agreement, signed by Plaintiff and notarized, as well as the Form W-9s for Plaintiff and Marx & Marx, L.L.C., regardless of the date of the Order referenced in this Paragraph.

       B.    **Form of Settlement Payment**. The Settlement Amount shall be remitted in two (2) separate amounts. The amount of Eighteen Thousand Seven Hundred and Fifty Dollars ($18,750.00) shall be payable by check, made payable to "Brian Theus", without any deductions for applicable federal and state payroll deductions. The amount of Eighteen Thousand Seven Hundred and Fifty Dollars ($18,750.00) shall separately be issued by check, made payable to "Marx & Marx, L.L.C.", as attorneys' fees and expenses.

       C.    **Remittance of Settlement Payment**. ABS shall send the Settlement Payment to Plaintiff's counsel using the following address: 5555 Glenridge Connector, Suite 200, Atlanta, Georgia 30342. ABS will issue a form 1099 for this payment directly to Plaintiff.

       D.    **Taxes**. Plaintiff acknowledges that and agrees that he is responsible for the payment of any and all federal, state, and/or local taxes, if any, that may be due and owing to any revenue agency for any amounts for which they would be ordinarily liable and that are or may be owed as taxes or other withholdings with respect to the Settlement Payment.

       4.    **Plaintiff's Representations and Acknowledgments**. Plaintiff acknowledges that he is not entitled to any leave (paid or unpaid), compensation, wages, bonuses, commissions and/or benefits to which he may be entitled arising from his employment or alleged employment with Defendants except as provided in this Agreement.

       5.    **Joint Motion to Approve Agreement and Dismissal**. The Parties attended a confidential settlement mediation with United States Magistrate Judge Janet F. King on May 25, 2017 (the "Mediation"). Within fourteen (14) days of the Mediation (i.e., by June 8, 2017), the Parties shall jointly file in the Litigation a Motion that requests Judge Amy Totenberg to enter an Order approving this Agreement and dismissing the Litigation with prejudice.

       6.    **No Admission of Fault**. All Parties acknowledge and agree that this Agreement is entered into and agreed upon by the Parties solely as a good faith effort to peacefully resolve all disputes released in this Agreement. The Parties acknowledge and agree that this Agreement is intended to compromise disputed claims and the Parties do not admit or acknowledge any liability to any other Party. Defendants' decision to settle the Litigation is strictly a business decision. In no way should this Agreement be construed as an admission of liability by any of the Parties. The Parties consider this to be a disputed claim of liability. Defendant Schoepf denies that he employed Plaintiff under any federal, state, or local law, including, without limitation, the FLSA. Defendants each deny all allegations of wrongdoing, liability, or violations identified in this Litigation.

       7.    **Future Contact**. Plaintiff agrees never to apply, seek, or accept employment with ABS or any related entities to ABS. Plaintiff also agrees not to identify ABS or any of its present, former, or future, officers, members, managers, managing members, employees, agents, representatives, or attorneys, including, without limitation, Schoepf, as a reference. ABS agrees that it will confirm only Plaintiff's dates of employment, and Plaintiff agrees that he will direct prospective employers to such information solely from Schoepf.

       8.    **Non-Assignment of Claims**. Plaintiff represents, understanding the materiality of this representation, and warrants that he has not conveyed, transferred, pledged, hypothecated, or in

any manner whatsoever assigned or encumbered any of the rights, demands, suits, judgments, actions, or causes of action released in this Agreement.

9. **Cooperation**. The Parties agree that, without receiving further consideration, they will sign and deliver such documents and do anything else that is reasonably necessary in the future to make the provisions of this Agreement effective, including, without limitation, ensuring the terms of this settlement receives approval by the Court in the Litigation and that the Litigation is dismissed with prejudice.

10. **Authority**. The Parties to this Agreement warrant and represent that each person executing this Agreement on their behalf are authorized to sign on behalf of the respective party and to bind it to the terms of this Agreement.

11. **Attorney's Fees and Costs**. The Parties shall be responsible for their own fees, costs, and all other expenses (including, without limitation, fees and/or expenses for attorneys or other professionals) arising from or in any way related to the matters that are the subject of this Agreement.

12. **Advice of Counsel**. By executing this Agreement, the Parties hereto agree that they have read and understand the terms and conditions of this Agreement, have been advised to and have had the opportunity to consult with an attorney, and that they have entered into this Agreement freely and voluntarily.

13. **Notice**. The Parties agree that, in the event any dispute arises under or relating to this Agreement and the subject matters addressed herein, the individual or entity having such dispute shall contact each other party to this Agreement by submitting a notice of that dispute, in writing, sent by certified mail, return receipt requested, and by email, using the contact information below.

   A. **Plaintiff**: Notice to Plaintiff shall be delivered care of Marx & Marx, LLC, Attn.: Robert Marx, Esq., 5555 Glenridge Connector, Ste. 200, Atlanta, GA 30342, and lawyers@marxlawgroup.com.

   B. **Defendants**: Notice to Defendants shall be delivered care of Goodman, McGuffey LLP, Attn: Robert A. Luskin, Esq. and Erin A. Easley, Esq., 3340 Peachtree Road, N.E., Suite 2100, Atlanta, GA 30326, rluskin@gmlj.com and eeasley@gmlj.com

14. **Waiver of Private Cause of Action**. In consideration of the Settlement Payment, Plaintiff waives, releases, and forever discharges the Released Parties from any obligation for any claim, known or unknown, arising out of the failure of the Released Parties to provide for a primary payment or appropriate reimbursement pursuant to 42 U.S.C. §1395y(b)(3)(A).

15. **Indemnification**. The Agreement constitutes a full accord and satisfaction with the Released Parties of any and all claims arising out of injury or damage to Plaintiff against the Released Parties. Plaintiff, in every legal capacity held, therefore agrees to completely indemnify and hold harmless the Released Parties, individually, and jointly, against any and all claims arising out of injuries or damages to Plaintiff, including but not limited to, claims for real or personal property damage, claims for personal injury, or bodily injury or mental pain, anguish and/or suffering, claims for the value or cost of medical services provided and liens (including but not limited to all hospital and other medical providers' liens pursuant to O.C.G.A. § 44-14-470), and all subrogation claims of every kind and nature arising out of injury and property damage to Plaintiff asserted by any other persons, insurers, governments or other entities, including any claim for contribution or indemnity by any joint tortfeasor or successor tortfeasor claimed to be liable in tort

to Plaintiff for injuries or damages resulting from this occurrence. This duty to indemnify for all such claims as specified in this paragraph will apply even if the occurrence was or may have been caused solely by the negligence of any released party or anyone else. Plaintiff hereby waives any and all rights of exemption, both as to real and personal property, to which Plaintiff may be entitled under the laws of this or any other state as against such claim for reimbursement or indemnity pursuant to this agreement. This indemnity provision specifically shall include all reasonable attorney's fees, costs and expenses of litigation, costs and expenses of investigation of claims, and monies expended in compromise and settlement of claims or satisfaction of judgments, or any other expenses incurred by any Released Parties in conjunction with the assertion of any claim by Plaintiff or anyone else for injuries or damages arising out of this occurrence. It is expressly understood and agreed that any attorney's fees, costs and expenses of litigation and other expenses described above expended in enforcement of this indemnity provision are also covered by this indemnity in favor of the Released Parties.

16. **Liens – Indemnity and Hold Harmless**. It is expressly understood and agreed, and Plaintiff covenants and agrees, that any and all Medicare, Social Security, hospital, medical insurance coverage subrogation claims and/or any and all other type of liens or interest that is and/or could be claimed by any person and/or entity, will be fully paid, satisfied and released from the Settlement Payment, in trust, unless and until such time as said liens and/or claims have been fully paid, satisfied or released. In this regard, Plaintiff agrees to indemnify and hold harmless the Released Parties, their insurance carriers, their attorneys, and all others in privity with them, from any claim by, through and/or under Plaintiff, including, but not limited to, any direct claim by Medicare and/or Social Security for reimbursement of any funds paid by them relating to any injuries and claims arising from the events underlying the Litigation. It is expressly understood and agreed that any attorney's fees, costs, and expenses of litigation and other expenses described above expended in enforcement of the indemnity provision in this Paragraph 16 are also covered by this indemnity in favor of the Released Parties.

17. **No Future Care Alleged**. No money out of the Settlement Payment is allocated towards future medical treatment. While it is impossible to accurately predict the need for future treatment, this decision was based upon a good faith determination of the parties in order to resolve a questionable claim. The Parties have attempted to resolve this matter in compliance with both state and federal law and it is believed that the settlement terms adequately consider Medicare's interest and do not reflect any attempt to shift responsibility of treatment to Medicare pursuant to 42 U.S.C. §1395y(b). In the event Medicare required reimbursement related to future medical treatment, this would be the sole responsibility of Plaintiff.

18. **Medicare Information**. Pursuant to Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007, The Center for Medicare and Medicaid Services must be provided Plaintiff's full address, Social Security Number, date of birth, gender, and, if available, his Medicare Health Insurance Claim Number (HICN.) It is understood and agreed that Plaintiff is required to provide the information requested below, and that such information will be provided to The Centers for Medicare and Medicaid Services pursuant to The Medicare, Medicaid and SCHIP Extension Act of 2007:

Full Name as it appears on Plaintiff's
Social Security Card

*Brian Allen Theus*

Social Security Number

[REDACTED]



Address ███████████

Date of Birth ███████

Medicare Health Insurance Claim Number (HICN)

N/A

Gender

Male

19. **Interpretation**. The Parties acknowledge and agree that this Agreement and the settlement memorialized herein were negotiated between counsel for all Parties and, in the event of a dispute about the meaning, construction, or interpretation of this Agreement, no presumption shall apply to construe the language of this Agreement for or against any of the Parties hereto. If any provision of this Agreement shall be determined to be void or unenforceable by a court of competent jurisdiction, the remainder of this Agreement shall remain valid and enforceable.

20. **Headings**. The headings or titles of paragraphs, sections and subsections contained in this Agreement are inserted only as a matter of convenience and to reference and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision of this Agreement.

21. **Separate Counterparts**. This Agreement may be executed in separate counterparts, each of which shall be deemed an original.

22. **Signature by Facsimile, .PDF, or .JPG**. In the event that any signature on this Settlement Agreement is delivered by facsimile transmission or by electronic means in ".PDF" or ".JPG" format data file, such signature shall create a valid and binding obligation of the Party executing the Settlement Agreement with the same force and effect as if such facsimile, .PDF, or .JPG signature page were an original thereof.

23. **Benefit/Assignment**. Subject to the provisions herein to the contrary, this Agreement shall inure to the benefit of and be binding upon the Parties hereto and their respective legal representatives, heirs, executors, administrators, trustees, successors, and assigns.

24. **Entire Agreement**. This Agreement is the entire agreement among the Parties hereto with respect to the matters herein and all negotiations in connection with this Agreement are merged herein. No representations, inducements, promises or agreements between the Parties hereto with respect to the subject matter hereof not embodied herein shall be of any force or effect.

25. **Amendment**. This Agreement may not be changed, amended, or modified unless such change, amendment, or modification is made in writing and signed by all Parties.

IN WITNESS WHEREOF, the undersigned have set their hands, this instrument to be effective as of the date above written.

*/s/ Brian Theus*
Brian Theus

Sworn to and subscribed before me this \_\_8\_\_ day of \_\_June\_\_, 2017.

_____
NOTARY PUBLIC
My commission expires: March 1, 2021

[Notary Seal: KIARA VARNER, NOTARY PUBLIC, GEORGIA, FULTON COUNTY, Expires March 1, 2021]

_____
Byron Schoepf

Sworn to and subscribed before me this _____ day of _____, 2017.

_____
NOTARY PUBLIC
My commission expires: _____

ABS Franchising, LLC

By:_____
    Byron Schoepf
    Title:_____

Sworn to and subscribed before me this _____ day of _____, 2017.

_____
NOTARY PUBLIC
My commission expires: _____

Sworn to and subscribed before me
this _____ day of _____, 2017.

_____
NOTARY PUBLIC
My commission expires: _____

_____
Byron Schoepf

Sworn to and subscribed before me
this __8__ day of __June__, 2017.

_____
NOTARY PUBLIC
My commission expires: March 26, 2020

**JENNIFER CHAMBERS**
NOTARY PUBLIC
Gwinnett County
State of Georgia
My Comm. Expires Mar. 26, 2020

ABS Franchising, LLC

By: _____
Byron Schoepf
Title: Managing Member

Sworn to and subscribed before me
this __8th__ day of __June__, 2017.

_____
NOTARY PUBLIC
My commission expires: March 26, 2020

**JENNIFER CHAMBERS**
NOTARY PUBLIC
Gwinnett County
State of Georgia
My Comm. Expires Mar. 26, 2020